UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD ADAMS

Write the full name of each plaintiff.

16 CV 06631

(Include case number if one has been assigned)

-against-

NEW YORK CITY; LIEUTENANT ANTHONY BURGIO SHIELD #02762; SERGEANT SEAN NOCE SHIELD #31328; OFFICER PAUL ELLERIN SHIELD #01461; OFFICER KEVIN MCCAHEY; RETIRED OFFICER KENNETH MCNAMEE SHIELD #13413; RETIRED OFFICER LEE FURMAN #30054; JOHN DOE CORRECTIONAL OFFICERS #1-4; JOHN DOE CORRECTIONAL SUPERVISORS #1-4; LIEUTENANT COMMANDER MCCATHY; COMMISSIONER JOSEPH PONTE

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**AMENDED COMPLAINT**

Do you want a jury trial?
☑ Yes   ☐ No

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question**

☐ **Diversity of Citizenship**

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?
42 USC 1983, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment to the Federal Constitution

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _____, is a citizen of the State of
(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                    (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Richard | | Adams |
|---|---|---|
| First Name | Middle Initial | Last Name |

c/o G. Bender & P. Blefield, 240 West End Avenue, Apartment 1D
Street Address

| New York | New York | 10023 |
|---|---|---|
| County, City | State | Zip Code |

| 212-724-9583 | N/A |
|---|---|
| Telephone Number | Email Address (if available) |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:    New York City
                _____
                First Name              Last Name

                _____
                Current Job Title (or other identifying information)

                _____
                Current Work Address (or other address where defendant may be served)

                _____
                County, City            State            Zip Code

Defendant 2:    COMMISSIONER           JOSEPH PONTE
                _____
                First Name              Last Name

                _____
                Current Job Title (or other identifying information)

                _____
                Current Work Address (or other address where defendant may be served)

                _____
                County, City            State            Zip Code

Defendant 3:    JOHN                   DOE CORRECTIONAL OFFICERS #1-4
                _____
                First Name              Last Name

                _____
                Current Job Title (or other identifying information)

                _____
                Current Work Address (or other address where defendant may be served)

                _____
                County, City            State            Zip Code

Defendant 4: **JOHN DOE CORRECTIONAL SUPERVISORS #1-4**

First Name          Last Name

**SEE ATTACHED.**

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

### III. STATEMENT OF CLAIM

Place(s) of occurrence: See attached.

Date(s) of occurrence: See attached.

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See Attached.

_____
_____
_____
_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

See Attached.
_____
_____
_____
_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

Compensatory damages in the amount of: $3 million
_____

Punitive damages in the amount of: $3 million
_____
_____
_____

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

4/27/2017
Dated

_Richard_ _Adams_
Plaintiff's Signature

First Name: Richard
Middle Initial:
Last Name: Adams

Street Address: 240 West End Ave

County, City: New York
State: NYC
Zip Code: 10023

Telephone Number: NY.

Email Address (if available):

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

## Additional Defendants:

5. Lieutenant Commander McCathy

6. Lieutenant Anthony Burgio Shield #02762

    a. 20th Precinct, 120 W 82nd Street, New York, NY 10024

7. Sergeant Sean Noce Shield #31328

    a. Police Services Area 8, 2794 Randall Avenue, Bronx NY 10465

8. Officer Paul Ellerin Shield #01461

    a. 20th Precinct, 120 W 82nd Street, New York, NY 10024

9. Officer Kevin McCahey

10. Retired Officer Kenneth McNamee Shield #13413

11. Retired Office Lee Furman Shield #30054

## STATEMENT OF FACTS

1. PLAINTIFF, Richard Adams, is a 60 year old African American who is a citizen of the United States and a resident of the State of New York.

2. On, or about, September 11, 2015 at approximately 11:45 p.m. PLAINTIFF was riding his bicycle to his job as a superintendent. In addition to being a handyman, he was also responsible for the building's garbage which required him to work nights to have the trash ready for pick-up. As he was biking, PLAINTIFF came across a discarded bicycle frame in front of a building amongst the piles of trash that were out for the pick-up the next day.

3. The bicycle frame was plainly abandoned because it lacked both wheels and a seat, the paint was faded and chipped, the bike frame lacked a derailer, the bike frame lacked a

1

chain, and the bike was significantly rusted in parts. The bicycle was not chained or locked to any stationary object. There were no other bicycles locked up nearby.

4. PLAINTIFF carried this abandoned bicycle frame and to a location near the intersection of 64th Street and Amsterdam Avenue in New York, New York that had better lighting. At no point during the walk did any person claim ownership of the bike frame, claim that the bicycle frame belonged to someone else, or try to stop PLAINTIFF.

5. PLAINTIFF intended to remove brake cables from the abandoned bicycle frame because they still appeared in fair condition despite the condition of the rest of the frame.

6. At that point, a police car that had been parked nearby, aggressively drove up to PLAINTIFF. Another squad car arrived from the opposite direction. At that point, Lieutenant Commander McCathy, and two of the police officers named as the Defendants were present. Lieutenant Commander McCathy exited one of the squad cars and asked what PLAINTIFF was doing. PLAINTIFF explained to the police officer where PLAINTIFF found the abandoned bicycle frame, the condition of the frame when PLAINTIFF found it, and that PLAINTIFF was headed to his job as a superintendent. The police officers observed the dismal condition of the bicycle including the faded and chipped paint, the missing seat, front wheel, back wheel, chain, and derailer, and rust. The police officers also observed that none of the missing parts (including the tires) were located around PLAINTIFF.

7. A police officer claimed that PLAINTIFF had a warrant for his arrest even though PLAINTIFF did not have a warrant for his arrest. In fact, despite this claim, none of the police officers present had asked for PLAINTIFF's identification card or checked PLAINTIFF's name with his radio or computer in the patrol car. PLAINTIFF made clear to the police officer that

PLAINTIFF did not have a warrant for his arrest—the police officer said he would arrest PLAINTIFF and they could sort it out at the precinct.

8. The police officer claimed that PLAINTIFF fit the description of a recent 911 call alleging that someone was vandalizing a bicycle. The police officer did not give any specifics from the alleged 911 call, and he did not explain how PLAINTIFF fit the alleged description. The police officer did not state that the alleged 911 caller claimed to own the bicycle or know who owned the bicycle. The alleged 911 caller did not provide any information beyond that which the officer could observe with his own eyes.

9. PLAINTIFF has no basis to believe that the police officer was telling the truth about the 911 call. PLAINTIFF did not see or hear any record of the 911 call, he was not told the identity of the 911 caller, and he wasn't told specific details of the alleged description. PLAINTIFF has no basis to believe that a 911 call was actually made, let alone that he fit the description. (Even after PLAINTIFF was arrested, no police officer ever engaged in any type of identification procedure).

10. At some point in this interaction, a third squad car showed up. Two of the police officers named as Defendants were now at the scene as well. At no point prior to the arrival of that squad car, or after the arrival of that squad car, did PLAINTIFF commit a visible crime, or admit to committing a crime to any police officer or person. At no point did PLAINTIFF take any action that created reasonable suspicion that PLAINTIFF was armed and dangerous. At no point did any police officer receive information from any person that PLAINTIFF was armed and dangerous. At no point did PLAINTIFF make any statements that would cause a police officer to believe that PLAINTIFF had committed a crime or that PLAINTIFF was armed and dangerous.

11. One of the police officers named as a Defendant from third squad car took PLAINTIFF's backpack from PLAINTIFF. That police officer searched PLAINTIFF's backpack. The police officer did not ask for PLAINTIFF's consent to search the backpack, nor did PLAINTIFF consent to a search of the backpack. The police officer did not have a warrant to search the back pack. The police officer lacked any exigent circumstance to search the backpack. The police officer lacked probable cause to arrest PLAINTIFF for any offense and lacked reasonable suspicion to believe that PLAINTIFF was armed and dangerous.

12. The police officer did not locate any bicycle parts in PLAINTIFF's bicycle. The police officer did not locate a bicycle seat or bicycle wheels in PLAINTIFF's backpack. PLAINTIFF's backpack was obviously too small to contain any bicycle wheels. The police officer saw PLAINTIFF's superintendent tools in PLAINTIFF's backpack, including a tape measure. PLAINTIFF explained to the police officer how PLAINTIFF used the tools as part of his job as a superintendent—including the tape measure. PLAINTIFF also reiterated that he was headed to his job as a superintendent to prepare a building's garbage for pickup the next morning.

13. At this point, the police officers began to place PLAINTIFF under arrest. At no point prior to the police placing PLAINTIFF under arrest, did the police officers speak to any person who claimed to be the owner of the abandoned bicycle frame. At no point before PLAINTIFF was placed under arrest, or after, did the police officers attempt to locate any purported owner of the abandoned bicycle frame.

14. PLAINTIFF did not resist, but PLAINTIFF continued to explain that he needed to go to work, that they confirm his employment, and that PLAINTIFF was the primary caretaker for his sister-in-law.

15. PLAINTIFF repeatedly asked the police officers to contact his sister-in-law, but the police officers repeatedly refused.

16. PLAINTIFF was arraigned the following day. PLAINTIFF was charged with Criminal Possession of Stolen Property in the Fifth Degree pursuant to New York Penal Law 165.40 and Possession of Burglar's tools pursuant to New York Penal Law 140.35. Bail was set at arraignment, and PLAINTIFF was housed at Riker's Island where he was forced to sleep for multiple days on the floor. He was subjected to these conditions despite several medical and psychological conditions that were untreated while incarcerated at Riker's Island.

17. PLAINTIFF was housed at Riker's Island in "C-95," also known as "AMKC" or "Anna M. Kross Center". Once he arrived at Riker's Island, JOHN DOE CORRECTIONAL OFFICERS #1-4 removed his jacket. He was kept there for four days, without JOHN DOE CORRECTIONAL OFFICERS #1-4 ever completing his intake. Once at Riker's Island he was never placed into a traditional cell, or even barracks style housing with his own bed, access to clean water, soap (or even disinfectant), provided access to a shower, or provided access to outdoor /recreational space. More importantly, during those four days, PLAINTIFF was never given his medication for a pinched nerve or Post Traumatic Stress Disorder despite his repeated requests.

18. To the contrary, he was housed exclusively in holding cells. He was transferred to a different one each day. Each holding cell contained approximately 20 to 25 men. PLAINTIFF was housed at one point or another in the holding cells with approximately 100 individuals waiting to be processed. The holding cells were never cleaned in any form while PLAINTIFF was housed there. None of the holding cells had soap or a working sink for PLAINTIFF or any other detainee to wash their hands after going to the bathroom. Moreover, toilet paper was only

sporadically available in each holding cell. Each holding cell was the size of a small room, much less than 300 square feet in size, so there was not enough space for each man to exercise or sleep at night.

19. To sleep at night, PLAINTIFF was forced to try to sleep on the floor. Because the holding cells were never cleaned, the floors were covered with refuse, including discarded food. PLAINTIFF had difficulty sleeping at night on the floors because of the pain from his unmedicated pinched nerve, the cold resulting from when JOHN DOE CORRECTIONAL OFFICERS #1-4 removed his jacket, and the unsanitary conditions. PLAINTIFF was not given a blanket when he requested one.

20. These conditions were the same for all of the men in the holding cells with PLAINTIFF. PLAINTIFF directly observed approximately a total of 100 men in these conditions. Because of space constraints, some of the men were forced to try sleeping while standing up.

21. At no point, did PLAINTIFF receive a medical evaluation. At no point, was intake into corrections complete.

22. PLAINTIFF was housed at Riker's Island in "C-95," also known as "AMKC" or "Anna M. Kross Center". Upon information and belief, the source of which is Noreen Malone, "This is Riker's," The Marshall Project (originally filed June 28, 2015) (Accessed on June 10, 2017 at https://www.themarshallproject.org/2015/06/28/this-is-rikers#.x0tmFYfgQ ), AMKC houses those with special needs and is consequently the largest of the housing blocks on Riker's Island.

23. JOHN DOE CORRECTIONAL OFFICERS #1-4, were directly responsible for failing to complete PLAINTIFF's intake, ensuring that he had adequate housing conditions, and

ensuring that he received proper medical attention despite his repeated requests. They each had the ability to place PLAINTIFF in more adequate housing conditions and ensure that he received proper medical attention, but failed to do so.

24. COMMISSIONER JOSEPH PONTE, and JOHN DOE CORRECTIONAL SUPERVISORS #1-4, were in charge of PLAINTIFF's detention. They each had the ability to place PLAINTIFF in more adequate housing conditions and ensure that he received proper medical attention. Each of them failed to act despite being directly informed of the conditions in deliberate indifference to PLAINTIFF's condition, and the conditions of at minimum hundreds of other detainees. Each of these supervisors had authority over the discipline of AMKC.

25. This failure to complete intake in a timely manner to provide PLAINTIFF with adequate and appropriate conditions of confinement and proper medical attention, was a direct result of the policies, practices, and customs of the New York City Department of Corrections. These conditions have been reported by numerous individuals including in Rich Juzwiak, "What It's Like to Be Gay in Rikers," Gawker.com (June 9, 2015) (last accessed on March 10, 2017 at http://gawker.com/what-its-like-to-be-gay-in-rikers-1709023533) ("I was arrested on a Thursday and I didn't get a bed until Monday night, though I'm pretty sure there's a law that says you're only supposed to be in there for 24 hours without having a bed. Until then I was kept waiting in a bullpen, which is essentially a small cage with about 30 other people. The floor was concrete; roaches and rats scuttled around on it. It smelled permanently terrible, of unwashed people going through detox for three to four days."). In contrast to the overcrowded conditions at AMKC, PLAINTIFF knows that the other housing blocks at Riker's Island are able to place individuals without special needs in beds within 24 hours.

7

26. PLAINTIFF PLAINTIFF was eventually released after his bail was paid. PLAINTIFF PLAINTIFF made numerous court appearances before the case against him was dismissed. PLAINTIFF was terminated from his employment because of the length of the incarceration. At no point during the duration of the proceedings, did PLAINTIFF receive notice pursuant to New York State Penal Law 450.10, which requires the government to give a criminal defendant notice that it intends to return stolen property to its owner.

# DESIGNATION OF AGENT FOR ACCESS TO SEALED RECORDS PURSUANT TO NYCPL 160.50[1][d]

I, **Richard Adams**, Date of Birth 11/4/1956, SS# 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, pursuant to NYCPL § 160.50[1][d], hereby designate ZACHARY W. CARTER, Corporation Counsel of the City of New York, or his authorized representative, as my agent to whom records of the criminal action terminated in my favor entitled <u>People of the State of New York v. _____</u>, Docket No. or Indictment No. (unknown), in Part A, Criminal Court, County of New York, State of New York, relating to my arrest on or about _____, may be made available for use in Civil Action 16cv06631, _____ (S.D.N.Y.).

I understand that until now the aforesaid records have been sealed pursuant to CPL § 160.50, which permits those records to be made available only (1) to persons designated by me, or (2) to certain other parties specifically designated in that statute.

I further understand that the person designated by me above as a person to whom the records may be made available is not bound by the statutory sealing requirements of CPL § 160.50.

The records to be made available to the person designated above comprise all records and papers relating to my arrest and prosecution in the criminal action identified herein on file with any court, police agency, prosecutor's office or state or local agency that were ordered to be sealed under the provisions of CPL § 160.50.

I further authorize the release of a list from the New York City Police Department that identifies all my prior arrests by date of arrest, charge(s) and disposition, including all sealed arrests.

_Richard Adams_
SIGNATURE

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF New York )

PETER CURME ANGELICA
Notary Public, State of New York
No. 01AN6317424
Qualified in New York County
Commission Expires: January 5, 2019

On this 27 day of April, 201_, before me personally came Richard Adams, to me known and known to me to be the individual described in and who executed the foregoing instrument, and RA acknowledged to me that RA executed the same.

_____
NOTARY PUBLIC